PENNSYLVANIA SUGAR REFINING CO. v. AMERICAN SUGAR REFIN-
ING CO. et al.

(Circuit Court, S. D. New York.    March 20, 1908.)

MONOPOLIES—INTERSTATE COMMERCE—SUGAR TRUST.

The purchase of a controlling interest in the stock of a sugar refining corporation, to acquire control thereof and prevent the corporation from refining sugar in competition with the purchaser, that the latter might control the business of refining sugar for sale in the United States, does not involve a monopoly or combination in restraint of commerce within the state, in violation of section 7 of the Sherman act (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]), as the manufacture of sugar does not constitute trade or commerce and only incidentally affects it.

Battle & Marshall (Frank S. Black, H. Snowden Marshall, and John W. Hutchinson, Jr., of counsel), for plaintiff.

Henry B. Closson and Tompkins McIlvaine (Henry W. Taft and John G. Johnson, of counsel), for defendants American Sugar Refining Company and Parsons.

Francis H. Kinnicutt, for defendants Robinson, Twigg, and Werner.

George H. Earle, Jr., receiver.

HOLT, District Judge. This is a motion to dismiss the complaint on the trial on the ground that it does not state facts sufficient to constitute a cause of action. The complaint alleges, in substance, that the plaintiff is a corporation organized under the laws of Pennsylvania, with a capital stock of $5,000,000; that the defendant the American Sugar Refining Company is a corporation organized under the laws of New Jersey, engaged in the business of importing raw sugar, and refining it, and selling the refined sugar; that the plaintiff, from 1883 till 1898, was engaged in the business of importing raw sugar, refining it, and selling it; that from 1898 to 1901 it ceased to do business, and that in 1901 it commenced the erection of a new and enlarged refinery, which was completed in 1903; that about the time of the completion of the refinery, and before it began to do business, the defendant the American Sugar Refining Company, Gustav E. Kissell, and certain of the other defendants entered into a conspiracy in restraint of trade and commerce between the states and with foreign countries; that pursuant to that conspiracy Kissell, as agent for the American Sugar Refining Company, but without disclosing his principal, loaned to Adolph Segal $1,250,000, and took from him as collateral security, among other property, $2,600,000 of stock of the plaintiff, being a little more than half its entire stock, with an agreement which provided, among other things, that four of the seven directors of the plaintiff should resign and their places be filled by Kissell's principal; that such agreement was carried out, the four directors resigned, and four persons selected by the American Sugar Refining Company were elected in their place; that thereupon the four new directors, constituting a majority of such board, pursuant to such conspiracy, and by direction of the American Sugar Refining

Company, voted not to operate the plaintiff's plant until the further order of the board; that such plant has not been operated since; that, as a result of such conspiracy and action, the plaintiff has suffered damage in the sum of $10,000,000—and judgment is demanded for three-fold damages, or $30,000,000, as provided in section 7 of the Sherman anti-trust act (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]).

The case of United States v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, in my opinion, controls this case. That was a suit brought by the United States against the E. C. Knight Company, a Philadelphia sugar refining company, and three other Philadelphia sugar refining companies, and the defendant in this case, the American Sugar Refining Company. The charge in that case was, in substance, that the American Sugar Refining Company had purchased the entire stock of the four Philadelphia refining companies; that the result of that purchase was that the American Sugar Refining Company had obtained a substantial monopoly of the business of refining sugar in the United States. The Supreme Court held that the action would not lie; that manufacture was not trade or commerce; that the action of the American Sugar Refining Company, in stopping the manufacture of sugar by the Philadelphia refineries, only incidentally affected the sale of the product; that Congress had no jurisdiction to pass laws to remedy injuries caused by such action, and that the states alone had power to pass such laws.

It is claimed by the plaintiff that this case differs from the Knight Case. It is said that in the Knight Case the American Sugar Refining Company purchased the entire stock of the Philadelphia refining company, and had a right to do what it chose with its own property; but that is not the ground of the decision of the Supreme Court. That decision is distinctly put upon the ground that the Sherman act only prohibits contracts or conspiracies in restraint of trade or commerce between the states, and that it has no application to a case where all that has occurred is to stop manufacture.

It is urged that the authority of the Knight Case has been modified by subsequent decisions, particularly the Northern Securities Case, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, and the very recent case of Loewe v. Lawlor, 208 U. S. 274, 28 Sup. Ct. 301, 52 L. Ed. ——, holding that a labor union boycott may be a combination in restraint of trade, under the Sherman anti-trust act. I have examined carefully those decisions, and I cannot see anything in them which would justify me in declining to follow the decision in the Knight Case.

This suit is obviously brought upon the Sherman anti-trust act, and the plaintiff's counsel admitted upon the argument that, in the present state of the pleadings, the plaintiff must recover upon that act, and could not recover upon any other theory of liability. In my opinion, no amendment can be made to the complaint which will make it good so long as it is based on the Sherman anti-trust act. The citizenship of some of the defendants does not distinctly appear. If in fact this court has jurisdiction of this case on the ground of the diverse citizenship of the parties, the plaintiff may desire to amend the com-

plaint and proceed upon some theory of equitable liability, in which case the plaintiff should have the usual leave to amend.

My conclusion is that the motion to dismiss the complaint should be granted, with leave to the plaintiff to amend the complaint within 30 days, upon payment of costs.